```
 1
 2                    UNITED STATES BANKRUPTCY COURT
 3                    EASTERN DISTRICT OF WASHINGTON
 4   In re:                        )
                                   )
 5   METROPOLITAN MORTGAGE &       )   Jointly Administered Under
     SECURITIES CO., INC.,         )   No. 04-00757-W11
 6                                 )
               Debtor.             )
 7   _____)
                                   )
 8   In re:                        )   MEMORANDUM DECISION RE:
                                   )   THOMAS G. TURNER'S EMERGENCY
 9   SUMMIT SECURITIES, INC.,      )   MOTION FOR RELIEF FROM STAY
                                   )   AND FOR PAYMENT OF DEFENSE
10             Debtor.             )   COSTS (Docket No. 8068)
                                   )
11   _____)
```

12    On September 22, 2005, a federal grand jury in Seattle
13 returned an indictment against Mr. Thomas G. Turner, former
14 President of Summit Securities, Inc., one of the debtors in the
15 administratively consolidated Chapter 11 cases. On September 26,
16 2005, the Securities and Exchange Commission (hereinafter "SEC")
17 commenced an action against Mr. Turner and others. Both actions
18 alleged violations of federal securities law. Trial has been
19 scheduled on the criminal charges for December 5, 2005. In order
20 to adequately prepare a defense to the criminal charges, Mr. Turner
21 needs the assistance of counsel as soon as possible.

22    On September 30, 2005, Mr. Turner filed a motion seeking to
23 lift the automatic stay to allow him to present an order in the
24 pending adversary proceeding *National Union Fire Ins. Co. of*
25 *Pittsburgh, P.A., et al. v. Metropolitan Mortgage & Securities Co.,*
26 *Inc., et al.*, No. 05-80135-PCW. That order would authorize
27 disbursement of $300,000 from the interpled insurance proceeds to
28 Mr. Turner's counsel to fund the defense of the criminal and SEC

MEMORANDUM DECISION RE: . . . 1

actions. Contemporaneously with the Motion to Lift Stay, Mr. Turner made a request in the interpleader action for the entry of such an order once the automatic stay was no longer applicable.

Mr. Turner has been represented by the law firm of Davis Wright Tremaine, LLP, in various civil actions relating to his involvement with the debtor. That firm would also provide representation in the criminal and SEC matters. Mr. Turner and the law firm have agreed that the representation would be undertaken upon receipt of a retainer of $300,000. That is not a flat fee for all defense of the criminal and SEC matters, but a classic retainer, i.e., a deposit of funds which would be reduced as the law firm would provide services, bill for those services and then satisfy the bill from the deposit. It is possible that the amounts due for the representation would be less or greater than the retainer. Mr. Turner lacks the personal financial resources to pay the retainer.

The $300,000 distribution is sought from the National Union policy proceeds, which policy (commonly referred to as a D&O policy) was originally in the amount of $10,000,000. There is also an excess $5,000,000 D&O policy issued by St. Paul (Adversary No. 05-80138-PCW). Theoretically, there is $15,000,000 available to pay all claims under those policies. Prior to interpleading the funds, National Union distributed $722,131.87 in policy proceeds as payment of various defense costs incurred by non-debtor insured under the policy in civil litigation. The Chapter 11 and Chapter 7 debtors are in the process of quantifying their claims under the policies as named insured but have previously made requests for $3,139,347.

MEMORANDUM DECISION RE: . . . 2

As a result of similar motions to lift stay brought by non-debtor insured seeking payment of defense costs in civil litigation from the policy proceeds, this Court has ruled that the stay should be lifted and orders entered in the National Union interpleader action, Case No. 05-80135-PCW, to pay defense costs incurred prior to June 30, 2005. That was the approximate date of the decision entered by this Court which held that the insurance policy proceeds were property of the estate. In previous similar motions to lift stay, this Court determined that as non-debtor named insured and their counsel had relied upon the policy proceeds for payment of defense costs prior to that decision, fairness and equity required distributions from the policy proceeds for defense costs incurred before June 30, 2005. To date, $984,912.55 has been approved for distribution from the National Union policy to reimburse costs of defense incurred prior to June 30, 2005. Additional applications for reimbursement are pending. This specific Motion to Lift Stay now seeks distribution for costs of defending criminal charges which are in the process of being incurred or yet to be incurred.

It has been apparent for some time that the insurance proceeds of the National Union and St. Paul policies will not be sufficient to pay all claims and possibly could be insufficient to pay all defense costs incurred by non-debtor named insured.

The Chapter 11 debtors and their Unsecured Creditors' Committees, the Trustee for the Chapter 7 debtor, and a group of plaintiffs in the pending civil litigation against non-debtor named insured objected to the current Motion to Lift Stay. Their position is that the stay should remain in effect as Mr. Turner, under the terms of the policy, is not entitled to receive this

MEMORANDUM DECISION RE: . . . 3

distribution and that any non-debtor named insured should be precluded from receiving any distribution for reimbursement of defense costs incurred after June 30, 2005. The basis for the latter position is that allowing distributions would deplete the policy proceeds before many claimants had an opportunity to bring their claims, whether those claimants are other non-debtor named insured or eventual holders of judgments against the non-debtor named insured.

## ISSUES

1. Does the National Union policy provide coverage, i.e., a right to receive a distribution from the proceeds, for the costs of defending against the criminal and SEC matters?

2. If so, does the policy only allow reimbursement for defense costs after they are incurred or does it allow a named insured to receive policy proceeds for purposes of providing a retainer for future services?

3. Does cause exist to lift the stay pursuant to 11 U.S.C. § 362(d) to allow distribution of policy proceeds to Mr. Turner?

## FIRST ISSUE

Exclusion 4(c) to the National Union policy provides that payments will not be made on losses arising from a claim against one of the named insured if the claim is one:

> (c) arising out of, based upon or attributable to the committing in fact of any criminal, fraudulent or dishonest act, or any willful violation of any statute, rule or law; . . .

The objecting plaintiffs in the securities civil litigation argue that as there is substantial evidence of Mr. Turner's fraudulent, criminal or dishonest acts, it would be inequitable to

MEMORANDUM DECISION RE: . . . 4

allow this distribution as such would deplete the funds which are available to pay the victims of those fraudulent, criminal or dishonest. Only after a finding that Mr. Turner did not, in fact, commit such acts, should he be reimbursed. Mr. Turner argues that the policy, by use of the phrase "in fact", contemplates distribution for reimbursement of defense costs until an adjudication is made that such acts occurred. After a finding that "in fact" such acts occurred, the insured would have a duty to repay the amount of policy proceeds received but prior to such adjudication defense costs must be paid from the policy.

Resolution of this issue requires application of insurance law and interpretation of the terms of the insurance policy.

## SECOND ISSUE

The debtors, Committees, and Trustee argue that any distribution to Mr. Turner or any other non-debtor insured at this time, undermines the intent of the interpleader. The purpose of the interpleader was to develop an orderly, coordinated distribution of policy proceeds to protect the debtors' (and all claimants') interests in the proceeds. Piecemeal distribution is contrary to that purpose and nullifies the benefit of the interpleader. Additionally, these objecting parties raise the same issue as the other objecting parties. They argue that as the policy pays defense costs "as incurred", the policy does not allow the payment of a retainer for future services. Only after the legal services are provided and billing statements produced and approved would the policy allow distributions to pay for such services. Mr. Turner's response is that, as he is unable to obtain the services of Davis Wright Tremaine, LLP, in the criminal and SEC

MEMORANDUM DECISION RE: . . . 5

matters without providing a retainer of $300,000, the policy allows such a distribution.

Again, resolution of this issue requires application of insurance law and interpretation of the terms of the insurance policy.

### THIRD ISSUE[1]

It is readily apparent that the underlying issue is whether policy proceeds should be distributed in accordance with the provisions of the policy which contemplate a "first come, first paid" distribution or whether policy proceeds should be distributed on a pro rata or some other equitable basis. This issue is the heart of the interpleader litigation.

On October 7, 2005, this Court recommended to the District Court that the reference be withdrawn and the three interpleader actions be litigated before the District Court. The District Court has not yet ruled on the withdrawal of reference. Pending that ruling, this Court continues to have jurisdiction to adjudicate the interpleader actions. Fed. R. Bankr. P. 5011(c). Should this Court address the merits of the pending request to distribute insurance policy proceeds, it would necessarily be interpreting insurance policy provisions which, if the reference is withdrawn, would also be relevant to issues to be determined by the District

---

[1] This Court will soon be reviewing a proposed procedure which would lift the automatic stay for all claimants to allow claimants to file appropriate pleadings in the interpleader actions and seek distribution of policy proceeds in the interpleader actions. The purpose of such a "blanket" lifting of the stay is to alleviate the burden of proceeding in the Chapter 11 or Chapter 7 cases prior to litigating each claimant's right to proceeds in the relevant interpleader action.

MEMORANDUM DECISION RE: . . . . 6

Court. This is inadvisable. Should this Court decide the merits of the pending request for distribution of insurance proceeds, it would be indirectly addressing the issue which lies at the heart of the interpleaders. Allowing distribution to Mr. Turner at this time would infer and indirectly be a de facto "first come, first paid" resolution of the primary dispute in the interpleader actions. If this Court determined that no distribution should occur, it would infer and indirectly be a de facto "equitable distribution" resolution of the primary dispute. Any decision on the merits of the pending request for distribution has significance in the resolution of the primary underlying issue prior to the identification of the Court which will decide that issue. It is inadvisable to make such a determination at this time.

As mentioned above, Mr. Turner has filed pleadings in adversary No. 05-80135-PCW procedurally sufficient to support a request for distribution. The automatic stay is lifted to allow Mr. Turner to take all actions necessary to resolve that request in the interpleader action once the District Court has ruled on the withdrawal of reference. The request should then be made promptly before the applicable Court.

DATED this 21st day of October, 2005.

/s/ Patricia C. Williams
PATRICIA C. WILLIAMS
Bankruptcy Judge

MEMORANDUM DECISION RE: . . . 7